### MID–WEST ELECTRIC CO. v. MID–WEST GENERAL ELECTRIC SUPPLY CO. *

Circuit Court of Appeals, Eighth Circuit.
November 15, 1929.

No. 8615.

*Rehearing denied January 30, 1930.

Edgar M. Morsman, Jr., of Omaha, Neb., for appellant.

W. C. Fraser, of Omaha, Neb. (Crofoot, Fraser, Connolly & Stryker, of Omaha, Neb., on the brief), for appellee.

Before VAN VALKENBURGH and GARDNER, Circuit Judges.

VAN VALKENBURGH, Circuit Judge. The Mid-West Electric Company, a Nebraska corporation, for years prior to December 10, 1926, had been engaged as a wholesale dealer in electrical supplies both in Omaha, Neb., and Des Moines, Iowa. Its business consisted largely in jobbing electrical supplies manufactured by the General Electric Company, a New York corporation. In the fall of 1926 the latter corporation, under a change of business policy, decided to job its own product. Negotiations were entered into between it and the Mid-West Electric Company, with the result that, December 10, 1926, a tentative agreement was entered into, whereby the Mid-West Company agreed to sell to the General Electric Company, or to its nominee, the following assets relating to its electrical jobbing business aforesaid:

"Furniture and equipment,
"Machinery and tools,
"Automobiles and trucks,
"Merchandise,
"Receivables,
"Prepaid accounts,
"Contingent or deferred accounts."

The Mid-West Electric Company further agreed to take at once such corporate action as might be necessary to validate and insure the performance of this agreement, including the elimination of the term "Mid-West" from its corporate name, if requested by the General Electric Company or its nominee. The latter company caused to be organized a Delaware Corporation under the name of Mid-West General Electric Supply Company, which it designated as its nominee under the tentative agreement aforesaid.

Accordingly, January 3, 1927, a contract was executed by the Mid-West Electric Company and the nominee, in which the substantive terms of the agreement of December tenth were embodied. It was provided, among other things, that the purchase price of the assets should be determined by an appraisal of their fair market value at the close of business on December 31, 1926, and that the purchaser should pay the seller in cash the appraised value of such assets, less 5 per cent. of the appraised value of the receivables, which the seller agreed to accept as full payment of said assets, except as provided in paragraph 4 of the contract. This paragraph, which is the storm center of this litigation, is in the words and figures following:

"It is recognized that the collections from the receivables to be purchased may exceed or be less than their appraised value. It is therefore agreed that if the amount collected from said receivables by December 31, 1927, exceed 95% of their appraised value the purchaser agrees to pay over any such excess to the seller and to reassign to the seller any such receivables still remaining in its hands on that date, and further if the amount collected from said receivables by December 31, 1927, is less than 95% of their appraised value the seller agrees to pay over any such difference to the purchaser and upon such payment the purchaser will reassign to the seller any such receivables still remaining in its hands. In determining the amount collected from such receivables, interest paid thereon shall not be taken into account. It is understood that the purchaser will make every reasonable effort to collect said receiv--

ables in full prior to December 31, 1927, and to that end the seller agrees to execute such further instruments of assignment and powers of attorney relating to such receivables as the purchaser may request."

The receivables turned over to appellee were of the face value approximately of $118,000. The seller paid 95 per cent. of that amount. During 1927 appellee collected all but $16,900.02, comprising about thirty-five items. These were tendered back to appellant, and payment was demanded therefor under the terms of paragraph four of the contract. Subsequently, all but six of these items, aggregating $15,418.65, were adjusted. Appellant refused to accept these six items on the ground that reasonable efforts had not been made to collect the same in full prior to December 31, 1927, as provided by paragraph 4. Appellee brought suit for the above items, less $5,939.10, the 5 per cent. of the face value retained by appellee at the time of purchase under the provisions of the contract. At the close of the testimony the court sustained appellee's motion for a directed verdict, and judgment was entered accordingly.

The case turns largely upon the interpretation and construction of paragraph 4 of the contract quoted above. Appellant contends that the agreement of the Mid-West Electric Company to repurchase was based upon the condition that the Mid-West General Electric Supply Company would use every reasonable effort to collect during the year 1927; that such reasonable effort to collect became a condition precedent, without performance of which by appellee no obligation to repurchase was imposed. It is pointed out that the pleadings were framed upon that theory. On the other hand, the main contention of the appellee is thus stated:

"1. The provision of the contract 'It is understood that the purchaser will make every reasonable effort to collect said receivables in full prior to December 31, 1927' was an independent covenant, not a condition precedent to the Purchaser's right to turn back the uncollected receivables to the seller.

"2. Where a contract contains several separate and independent covenants, not covering the whole ground of the contract, and it has been executed or performed in part by one of the parties, a covenant of his going only to a part of the consideration, a breach of which may be paid for in damages, will be regarded as independent, the performance of the contract as divisible, and he may maintain an action for a breach thereof by the oth-

er party without proving performance of such covenant."

It is also urged that appellant is without standing in court, for the reason that it has already taken back the receivables in question, and is therefore precluded from urging this defense, but is remitted to an action for damages, if any, it has suffered in the premises. And, finally, appellee insists it did make every reasonable effort to collect, and that there is no evidence to the contrary requiring submission of any issues of fact to the jury.

The two last points may be disposed of briefly. We do not think the record supports the contention that appellant received back and accepted the disputed items. It is probably true that it received the ledger and ledger cards from which the state of the uncollected accounts might be examined and ascertained, and that it did accept and did collect some of the other items that remained uncollected. However, the record discloses consistent protest against, and dissatisfaction with, the methods pursued by appellee in the collection of these accounts, especially of the disputed items. This contention of appellee cannot be indulged.

Whether appellee did make the required effort to collect is the major question of fact presented by the pleadings. The greater part of a somewhat extended record is taken up with testimony upon this contested point. We think the substantial conflict resulting demanded submission to the jury, if the law applicable permitted.

We come then to the first and crucial point upon which appellee places its main reliance. It is the general rule that, when a covenant goes only to part of the consideration on both sides, and a breach may be compensated for in damages, it is to be regarded as an independent covenant. To render this rule applicable it is necessary that the covenants and consideration in their nature cannot be apportioned. 13 C. J. p. 571. This rule finds apt illustration in the decision of this court in Union Pacific Railway Company v. Travelers' Insurance Company, 83 F. 676. We quote from the syllabus:

"A railroad company leased to another ground at a station on which the lessee contracted to erect a building 152 feet long, 42 feet wide, and two stories high, in which he agreed to furnish the company rooms for station purposes, and to maintain a first-class hotel. The company covenanted not to permit the use of its other property to the injury of the hotel, and that it would stop all

its passenger trains passing at seasonable hours for meals a sufficient time to allow the passengers to take meals. The contract was observed by both parties for 15 years, during which time the lessee had increased the capacity of the hotel until it contained 55 sleeping rooms. After that time the company ceased to stop the only passenger train passing at a seasonable hour for meals a sufficient length of time for the passengers to take meals. Held, that the agreement to stop the trains did not go to the whole consideration of the contract, so as to entitle the lessee on its breach to recover as for a total breach of the entire contract."

It is also true that the promisee of a conditional promise always runs a chance of losing what he has done if he fails to fulfill the condition, Thompson-Starrett Co. v. La Belle Iron Works (C. C. A. 2) 17 F.(2d) 536; and that "he who commits first substantial breach * * * cannot maintain an action against the other contracting party for the latter's subsequent failure to perform." Kempner v. Goddard Grocer Co. (C. C. A. 8) 5 F.(2d) 807, 809.

In the case before us appellant makes no effort to defend as for a total breach of the entire contract, as was the attempt in Union Pacific Railway Co. v. Travelers' Insurance Co., supra. It merely insists upon the fulfillment of the express condition that appellee must have made every reasonable effort to collect before it can insist upon reassignment to appellant of these receivables. Paragraph 4 of the contract is complete in itself. The covenant and the consideration therefor are susceptible of direct apportionment without reference to any other provision of the contract, and without affecting that contract as a whole. The language of paragraph 4 is susceptible of no other natural and reasonable interpretation than that for which appellant contends. That this was the understanding of appellee is confirmed by the terms of its pleading. As a preliminary allegation of its qualification to seek recovery it avers that it, "during the period from January 3, 1927 until December 31, 1927, made every reasonable effort to collect said receivables." This allegation was traversed in appellant's answer. The issue was thus clearly joined, and should have been submitted to the jury. Under such circumstances it is idle to insist upon the circuity of compelling appellant first to accept the receivables, and thereafter to bring a suit for damages upon substantially the same issue of breach of contract. We have carefully and purposely refrained from expressing any opinion upon the merits.

Because of the error committed in sustaining the motion for a directed verdict in favor of appellee, the judgment must be reversed and the case remanded, with directions to grant a new trial. It is so ordered.